UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DEMARIO GILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:04CV 159 LMB |
| | ) |
| UNKNOWN HARDEN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of plaintiff Demario Gillard alleging a civil rights action pursuant to 42 U.S.C. § 1983 against defendants Debbie Hardin,[1] Michael Hakala, Glen Babich, and Correctional Medical Services, Inc. ("CMS"). This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Currently pending is defendants' "Motion for Reconsideration of 12-15-05 Order of Defendants Hardin, Babich, Hakula and CMS." (Document Number 20). Also pending is Defendants Hardin, Babich, Hakala, and CMS' Motion for Summary Judgment. (Doc. No. 17). Plaintiff has filed a Response to defendants' Motion for Summary Judgment. (Doc. No. 21). Defendants have filed a Reply. (Doc. No. 22).

---

[1]Plaintiff named "RN-Ms. Harden," as a defendant in his Complaint. In their Motion for Summary Judgment, defendants refer to this individual as "Debbie (Hardin) Vinson." This individual is identified as "Deborah M. Hardin" in plaintiff's medical records. In order to avoid confusion, this defendant will be referred to as "Ms. Hardin," in this Memorandum and Order.

In his Complaint, plaintiff, who resides at Southeast Correctional Center ("SCC"), states that he has sores on his feet, and that he requires special orthopedic shoes. Plaintiff claims that defendants, employees at SCC, were deliberately indifferent to his medical needs in failing to obtain orthopedic shoes for him to replace ones that were stolen from him.

Defendants filed a Motion to Dismiss for Failure to Exhaust, which the court denied on December 15, 2005. (Doc. No. 19). On December 19, 2005, defendants filed a motion for reconsideration of the court's order denying defendants' motion to dismiss. (Doc. No. 20). Defendants have also filed a Motion for Summary Judgment. The undersigned will discuss each motion in turn.

**A. Defendants' Motion for Reconsideration**

In their Motion to Dismiss, defendants argued that plaintiff's Complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to the filing of the instant action. Defendants stated that plaintiff filed his Complaint on November 12, 2004 and thereafter, on November 18, 2004, filed a Grievance Appeal with the Department of Corrections, which was responded to on December 1, 2004, and was co-signed on December 2, 2004. Defendants attached plaintiff's Grievance Appeal, along with the Response of the Department of Corrections, as exhibits. After reviewing the documents submitted by defendants, the court found that plaintiff filed his Grievance Appeal on October 29, 2004, prior to the filing of the instant action. As such, the court declined to dismiss plaintiff's Complaint for failure to exhaust his administrative remedies.

In their Motion to Reconsider, defendants argue that the date plaintiff filed his Grievance Appeal is not controlling. Rather, defendants contend that the date upon which the Grievance Appeal was responded to is the controlling date for purposes of exhaustion. Defendants argue

that, because plaintiff filed this action before his Grievance Appeal was responded to, this action should be dismissed. Defendants have attached as an exhibit the Missouri Department of Corrections manual, which defines "exhaustion" as "[c]ompletion of the formal procedure at the division director's level prior to filing a lawsuit." Def's Ex. AAA.

Although the Federal Rules of Civil Procedure do not mention motions for reconsideration, the Eighth Circuit Court of Appeals has held that when the motion is made in response to a non-final order, which is the case here, Rule 60(b) applies. See Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). Rule 60(b) allows a party to seek relief from a final judgment or an order if the party can prove mistake, inadvertence, surprise, excusable neglect, fraud, the judgment is void, or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). Such relief, however, is an "extraordinary remedy" that is only justified by "exceptional circumstances." Watkins v. Lundell, 169 F.3d 540, 544 (8th Cir. 1999). Further, Rule 60(b) is "not a vehicle for simple reargument on the merits." Broadway, 193 F.3d at 990. Thus, a motion to reconsider pursuant to Rule 60(b) is properly denied for example, where the movant "d[oes] nothing more than reargue, somewhat more fully, the merits of their claim." Id. at 989-990.

In this case, the court finds that defendants' argument lacks merit. Defendants do not cite any of the enumerated circumstances justifying relief from the court's order denying its motion to dismiss. Rather, defendants merely make the same arguments that they made in support of their motion to dismiss. Although it is true that plaintiff's Grievance Appeal was not responded to until nineteen days after plaintiff filed suit, plaintiff completed every step necessary to exhaust his administrative remedies prior to filing suit. There was nothing left for plaintiff to do administratively at the time he filed this action, and there is nothing left for plaintiff to do at

this time. The parties have completed discovery and defendant has filed a motion for summary judgment. Thus, the court will deny defendants' motion for reconsideration.

### B. Defendants' Motion for Summary Judgment

In support of their Motion for Summary Judgment, defendants argue that plaintiff has failed to show deliberate indifference and that he has failed to show that he had a serious medical need. Defendants further argue that defendant has not identified any policies of CMS that violated his constitutional rights and that plaintiff may not use the doctrine of respondeat superior to establish the causal link between the actions taken by CMS and the alleged unconstitutional treatment he received.

In his Response, plaintiff states that his medical records provide enough support for his claim to defeat defendants' Motion for Summary Judgment. Plaintiff argues that CMS staff failed to provide adequate medical care by not allowing plaintiff to see an orthopedic physician. Plaintiff requests that the court grant him additional time in order for him to obtain his medical records.

In their Reply, defendants argue that plaintiff has failed to fulfill his requirement of disputing the facts set forth by defendants. Defendants also state that counsel for defendants arranged for plaintiff to receive his medical records on June 24, 2005. Defendants have attached a copy of communication from defense counsel instructing the recipient to provide plaintiff with a free copy of his medical records. See Def's Ex. AAA.

#### 1. Factual Background

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Plaintiff was evaluated by an independent, non-defendant orthotic and prosthetic provider on October 15, 2003, prior to his transfer to SCC. See Def's Ex. E-2. This provider noted that plaintiff was measured for orthotic tennis shoes with extra depth and was to have impressions

taken for the fabrication of shoe inserts to help reduce pressure on his foot, which had caused ulceration on the plantar surface and areas of plaintiff's skin graft. See id.

On December 11, 2003, after plaintiff was transferred to SCC, Dr. Glen Babich submitted a referral request for plaintiff to have a follow-up appointment with the orthotic and prosthetic provider for the fitting of his specialized shoes and inserts. See Def's Ex. E-3.

Plaintiff saw the orthotic and prosthetic provider on December 18, 2003. See Resp't Ex. E-4. The provider noted that plaintiff's orthotic tennis shoes and inserts fit well, that plaintiff was issued the shoes and inserts, and that plaintiff was educated on the use of the shoes and inserts. See id.

Ms. Hardin saw plaintiff on January 30, 2004, and February 2, 2004, for unrelated nursing care. See Def's Ex. E-5.

Plaintiff was evaluated by non-defendant physicians on April 23, 2004 and on June 10, 2004. See Def's Ex. E-15. These physicians noted that plaintiff's right foot was injured in a childhood accident, which resulted in skin grafts to the foot. See id. They stated that plaintiff was issued orthotic shoes on October 3, 2003, and that plaintiff indicated that the shoes were stolen, although plaintiff did not report the theft to custody. See id. These physicians provided plaintiff shoe inserts for cushioning and referral requests for replacement of his orthotic shoes. See id.

Plaintiff was examined by non-defendant nursing personnel on May 18, 2004, May 28, 2004, June 28, 2004, August 4, 2004, August 18, 2004, November 30, 2004, and May 10, 2005. See Def's Ex. E-16. The non-defendant nursing staff examined plaintiff's feet, referred plaintiff to a physician for further evaluation of his foot condition, provided basic wound care to his foot sores, and provided patient education regarding care of the foot condition. See id.

On June 28, 2004, Dr. Babich evaluated plaintiff and found a skin break on plaintiff's left heel pad and noted that the area had no fat pad for protection. See Def's Ex. E-6. Dr. Babich noted that plaintiff indicated that his orthopedic shoes had been stolen. See id. Dr. Babich prescribed Duoderm[2] gel and a Telfa[3] patch and stated that plaintiff should change the patch every 2-3 days until the open area on his heel sore was healed. See id. Dr. Babich recommended that plaintiff use a cane for no weight bearing status to left foot until the open area was healed. See id. Dr. Babich also submitted a referral request for plaintiff to receive new tennis shoes with a heal pad, as plaintiff had grafting to his heels as a child and plaintiff indicated that his shoes had been stolen. See id. The request was subsequently withdrawn because it was noted that stolen items are a custody issue, pursuant to Health Services Administrator ("HSA"), and that the Missouri Department of Corrections would be issuing credit for replacement of plaintiff's shoes and inserts. See id.

Dr. Michael Hakala evaluated plaintiff on July 28, 2004 and on August 26, 2004, for unrelated medical complaints. See Resp't Ex. E-7, E-8. Dr. Hakala did not note any complaints by plaintiff regarding his feet. See id.

Ms. Hardin met with plaintiff on September 7, 2004, and again on September 15, 2004, to discuss plaintiff's Informal Resolution Requests. See Def's Ex. E-9.

Dr. Hakala evaluated plaintiff on October 4, 2004, and noted that plaintiff's shoes had been stolen, and that plaintiff had a history of an accident with several surgeries to both feet. See Def's Ex. E-10. Dr. Hakala stated that plaintiff had an ulcer on his left heel that was shallow and

---

[2]Duoderm is a medicated gel used to treat open sores. See Dec. of Dr. Elizabeth Conley, Def's Ex. D at ¶ 10.

[3]Telfa is a type of dry dressing. See Dec. of Dr. Elizabeth Conley, Def's Ex. D at ¶ 11.

measured two centimeters by one centimeter in size, without signs of infection. See id. Dr. Hakala recommended that plaintiff continue with his Duoderm dressing changes. See id. Dr. Hakala noted that plaintiff refused to use crutches to keep the pressure off his heel and that plaintiff did not want to stop working. See id.

Ms. Hardin evaluated plaintiff on November 9, 2004, during routine nursing rounds in the Disciplinary Segregation unit. See Def's Ex. E-11. Ms. Hardin noted that plaintiff had no complaints. See id.

Dr. Babich evaluated plaintiff on May 10, 2005, and noted that plaintiff was wearing Ridell brand tennis shoes and asked for permission to purchase shoes from a catalogue. See Def's Ex. E-12. Dr. Babich stated that plaintiff indicated that he still had not received the replacement orthotic shoes from custody. See id. Upon examination, Dr. Babich found that plaintiff's right foot skin graft was intact with no open areas and his left heel skin graft was intact with the exception of three pinpoint red openings in the area of the mid foot. See id. Dr. Babich submitted a referral request for plaintiff to receive a replacement of his custom tennis shoes, as custody did not replace his shoes due to the inability to determine whether the shoes were stolen. See id. The referral request was approved on May 17, 2005. See id. Dr. Babich also requested that custody check plaintiff's property to determine what shoes he had in his possession. See id.

Dr. Hakala evaluated plaintiff on May 11, 2005 for unrelated issues, and noted that plaintiff walked normally and was wearing Ridell tennis shoes with insoles. See Def's Ex. E-13. Dr. Hakala found that plaintiff's left heel graft was soft and had four small open areas with a small amount of drainage, no heat or bleeding, and that the right foot graft was soft and without open areas. See id.

On May 18, 2005, non-defendant healthcare personnel contacted the non-defendant orthotic and prosthetic provider and ordered a replacement for plaintiff's custom tennis shoes. See Def's Ex. E-14. On May 26, 2005, plaintiff signed a receipt for the replacement custom shoes, issued by non-defendant healthcare personnel. See id.

Plaintiff filed an Informal Resolution Request on August 16, 2004, in which he stated that he was not receiving proper healthcare for the sores on his foot caused by state-issue boots. See Def's Ex. E-17. Plaintiff also claimed that he needed to be seen by a foot specialist. See id. Ms. Hardin responded to plaintiff on September 7, 2004, and noted that this issue was addressed in a previous Informal Resolution Request and that treatment was completed. See id. Plaintiff filed an Offender Grievance on September 21, 2004, in which he stated that he had been seen and treated with orthopedic shoes prior to his transfer to SCC, and that his shoes had been stolen since his arrival at SCC, and needed to be replaced. See id. HSA responded to plaintiff on October 7, 2004, and noted that no stolen property form had been completed according to custody staff and that CMS was not responsible for stolen property. See id. Plaintiff then filed a Grievance Appeal on October 29, 2004, in which he again stated that he needed replacement orthopedic shoes and he needed to see a specialist. See Def's Ex. A. Plaintiff's Grievance Appeal was responded to on December 1, 2004. See Def's Ex. B. It was noted that plaintiff had still not reported his shoes stolen. See id. Plaintiff was instructed on how to obtain replacement custom shoes. See id.

### 2. Standard of Review

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. at 2555 (quoting Fed. R. Civ. P. 1).

Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983, claiming violations of his rights under the Eighth Amendment. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . ." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255-56, 101 L.Ed.2d 40 (1988). Thus, to be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show that: (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the

deprivation of a right secured by the Constitution or laws of the United States. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S. Ct. 2427, 2439, 85 L.Ed.2d 791 (1985); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

### 3. Medical Needs

Plaintiff claims that defendants were deliberately indifferent to his medical needs. He states that he has sores on his feet due to a medical condition and that he requires special orthopedic shoes. Plaintiff argues that defendants failed to provide special orthopedic shoes to replace ones that were stolen from his property.

"The Eighth Amendment requires prison officials to provide humane conditions of confinement, and '[o]ne condition of confinement is the medical attention given to a prisoner.'" Aswegan v. Henry, 49 F.3d 461, 464-65 (8th Cir. 1995) (quoting Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995)). There is both an objective and subjective component to a claim of deliberate indifference. To establish deliberate indifference in the context of the denial of medical care, plaintiff must demonstrate: (1) that he "suffered objectively serious medical needs" and (2) that the prison official "actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison official knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). However, negligence is insufficient to rise to a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level

of a constitutional violation." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

The court finds that plaintiff has failed to show that defendants deliberately disregarded plaintiff's known serious medical needs. As such, the court need not decide whether plaintiff's allegations satisfy the objective component of an Eighth Amendment violation.

With regard to Defendant Debbie Hardin, the undisputed material facts and plaintiff's medical records show that Ms. Hardin provided adequate nursing care to plaintiff. Ms. Hardin provided plaintiff with routine nursing care and with an interview in response to his Informal Resolution Request. Defendants have submitted the Declaration of Dr. Elizabeth Conley, a licensed physician in the State of Missouri and Nebraska, who is Board Certified in Family Medicine, and serves as the Regional Medical Director for CMS. See Def's Ex. D at ¶ 2. Dr. Conley states that, based on her review of plaintiff's medical records, she does not believe that Ms. Hardin treated plaintiff with deliberate indifference. See id. at ¶ 3. Rather, Dr. Conley states that the care Ms. Hardin provided fell well within the standard of care in the community. See id. Plaintiff has not presented any evidence that Ms. Hardin acted with deliberate indifference.

Regarding Defendant Glen Babich, the record reveals that Dr. Babich provided adequate medical care to plaintiff. Dr. Babich submitted a referral request for plaintiff to have a follow-up appointment with an orthotics and prosthetics specialist, examined plaintiff's foot, prescribed Duoderm gel and a Telfa patch for the wounds on plaintiff's foot, instructed plaintiff on the care of his foot, recommended that plaintiff use a cane, and submitted a referral request for plaintiff to receive replacement orthopedic tennis shoes. Dr. Conley stated that, based upon her review of plaintiff's medical records, the care Dr. Babich provided to plaintiff fell well within the standard of care in the community. See Def's Ex. D at ¶ 4. Plaintiff points to nothing in the record that

shows that Dr. Babich was even negligent, let alone displayed deliberate indifference to a serious medical need. Significantly, Dr. Babich advocated for plaintiff to receive replacement orthopedic tennis shoes, the very relief that plaintiff requested.

Finally, with respect to Defendant Michael Hakala, the record reveals that Dr. Hakala provided adequate medical care to plaintiff. Dr. Hakala examined plaintiff's foot and recommended that plaintiff continue with the dressing changes to the wounds on his foot. Dr. Conley stated that, based upon her review of plaintiff's medical records, the care Dr. Hakala provided to plaintiff fell well within the standard of care in the community. See Def's Ex. D at ¶ 5. Plaintiff has failed to present any evidence that Dr. Hakala acted with deliberate indifference to plaintiff's medical needs.

The court finds that there is no genuine issue of material fact that Ms. Hardin, Dr. Babich, and Dr. Hakala did not show deliberate indifferent to plaintiff's serious medical needs.

### 3. Liability of Defendant CMS

In his Complaint, plaintiff lists CMS as a party defendant. Defendants argue that CMS cannot be held liable in this case because plaintiff's claims rest on vicarious liability or respondeat superior liability, which is not actionable under 42 U.S.C. § 1983.

Plaintiff's claims against CMS should be dismissed because CMS is not a suable entity. Liability cannot be imposed against CMS absent an allegation that unlawful actions were taken pursuant to a policy or custom of CMS. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . that the government as an entity is responsible under § 1983").

There being no such allegation in plaintiff's Complaint, CMS should be dismissed from this action.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Debbie Hardin, Glen Babich, Michael Hakala, and CMS's Motion for Reconsideration (Doc. No. 20) be and it is **denied.**

**IT IS FURTHER ORDERED** that defendants Debbie Hardin, Glen Babich, Michael Hakala, and CMS's Motion for Summary Judgment (Doc. No. 17) be and it is **granted**. A separate Summary Judgment will be entered on this date.

Dated this  27th  day of March, 2006.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE